## CHARLES LEWIS *versus* JACOB WHITTEMORE.

Where the goods of A are intermixed with the goods of B, and a sheriff, by
virtue of a writ against B, takes the goods of A and B, which are so inter-
mixed, the sheriff cannot be treated as a trespasser for taking A's goods,
although A's goods may have been so intermixed without his assent.

A lived upon, and managed, the farm of B, for B, and having upon the farm
a yoke of oxen, ploughs and other articles, and being indebted to B, whom
he preferred to pay rather than another creditor who was pressing him for
payment, he sold the said property to B, for its full value, to pay the debt of
B. The property remained upon the farm, and was used there by A,
after the sale—it was held, that, under these circumstances, the leaving of
the property upon the farm was no evidence of a secret trust.

THIS was an action of trespass *de bonis asportatis*, and
was tried upon the general issue, at September term,
1830.

It appeared in evidence, that the plaintiff was seized
and possessed of a farm in Milford, which he put under
the care of Nehemiah Haywood, in April, 1824. Hay-
wood was to carry on the farm for the plaintiff, was to
sell the produce and account for the proceeds, and had
liberty to use and consume in his family such produce as
he might want, and was to have a reasonable compensa-
tion for his services. Haywood continued upon the
farm until the year 1828, under this agreement.

Isaac Parker, having an execution against Haywood,
delivered the same to a deputy of the defendant, the
sheriff of the county, who, on the 26th November, 1828,
took a quantity of corn, which was found in the build-
ings on the farm, by virtue of the execution. A part of
the corn grew on the said farm and was the property of
the plaintiff, and a part of it was the property of Hay-
wood, but it was all in one parcel and intermixed, and
when the corn was seized, the deputy was told by Hay-
wood, that the whole belonged to the plaintiff, but im-
mediately after, and before the corn was removed, Hay-
wood informed the deputy that only a part of the corn
belonged to the plaintiff, and that the plaintiff's corn

had been mixed with Haywood's, without the knowledge or consent of either.

The court being of opinion that, under the circumstances, the taking of the corn could not be treated as a trespass directed the jury accordingly.

The said deputy took several other articles, which had been the property of Haywood, but which he had sold to the plaintiff for their full value, to pay a debt justly due to the plaintiff. The said articles were chains, a yoke, a waggon, a colt, a bull, ploughs and oxen, which Haywood had upon the farm, and which were left with Haywood upon the farm by the plaintiff after the sale. And Haywood testified, that being indebted to the plaintiff, and wishing to pay him in preference to paying the said execution, he was induced by that consideration to sell the said articles to the plaintiff. The oxen had been purchased by Haywood after he had agreed with the plaintiff to take them of him at the price Haywood should give, and they were wanted by the plaintiff to work on the farm.

The court being of opinion that the sale of the last mentioned articles was, under the circumstances, fraudulent, directed the jury accordingly.

And a verdict was taken for the plaintiff for $2,98, being the value of a quantity of plank belonging to the plaintiff which had been taken by the deputy, subject to the opinion of the court upon the above case.

*C. H. Atherton*, for the plaintiff.

*E. Parker*, for the defendant.

*By the court.* The direction which was given to the jury in this case, in relation to the corn, was correct. It is immaterial whether the corn had been mixed with the plaintiff's assent or not. It was all in the possession of the plaintiff's agent, Haywood, and while in Haywood's possession had been intermixed. Haywood at first told the officer that the corn belonged entirely to the plaintiff; and although he afterwards informed the officer that on-

ly a part of the corn belonged to the plaintiff, it does not appear that he stated what portion was the property of the plaintiff. It was the duty of the officer to attach the goods of the debtor, notwithstanding they were intermixed with the goods of the plaintiff; and he had a right to take and hold the whole until the plaintiff identified his goods, and demanded a redelivery. 8 Pick. 443, *Shumway* v. *Rutter* ; 7 Mass. Rep. 127 ; 2 Bl. Com. 405 ; 1 N. H. Rep. 87, *Pettingill* v. *Bartlett* ; Cooper's Justinian Lib. 2, F. 1 sec. 17 and 18.

The sheriff cannot be treated as a trespasser for doing what he had a right to do.

If the plaintiff gave the officer notice of what interest he had in the corn, and demanded a return, trover may be maintained. If the officer has sold the whole, after notice of the plaintiff's claim, that may be a conversion. But trespass does not lie, for the original taking.

As to the goods which were sold to the plaintiff by Haywood, if it appeared that the sale was kept secret, and that Haywood continued to be apparently the owner as before, the case would come within the principle of the case of *Trask* v. *Bowers*, 4 N. H. Rep. 309, and the sale must be deemed fraudulent. In such a case, the secret trust, which constitutes the fraud, is the advantage which the seller of the goods derives from retaining the possession apparently as owner, and thus sustaining his credit.

But in this case, it does not appear that there was any secrecy in relation to the sale. Haywood was indebted to the plaintiff and sold the goods, to pay the debt, at a fair price. He had a right to pay the plaintiff in preference to any other creditor. And if the sale was open, and the possession not calculated to give Haywood a false credit, it is not easy to imagine any trust in the case. We are therefore of opinion, that the jury were misdirected with respect to those goods, and the verdict must be set aside and

*And a new trial granted.*