SAMUEL N. TUFTS & *al.* v. JAMES Y. McCLINTOCK.

An officer is not authorized by a precept against one person to take the property of another. But a previous demand upon the officer may be necessary, before an action can be maintained, when the goods of the plaintiff, taken by the officer, were so intermingled with those of the debtor, *as not to be* distinguishable therefrom. It is not, however, necessary that the property should be so distinctly marked, that an officer, by his own observation, would be able to perceive, that it did not belong to the same individual, in order to make him liable.

THIS case came before the Court upon the following exceptions to the ruling of GOODENOW, District Judge.

This is an action of trespass. Writ is dated July 6th, 1847, and the general issue with a brief statement was pleaded and joined.

The action is brought against the defendant, who is the sheriff of the county of Waldo, for the act of one George W. Webster, his deputy, in attaching a lot of boots and brogans and shoes, as set forth in the writ, which may be referred to by either party. The fact that the defendant was sheriff of the county of Waldo, and Webster his deputy duly appointed and qualified, was admitted.

It was proved, that on the 10th day of March, 1847, the plaintiffs left with one Stephen S. Gerrish the articles sued for, to sell, valued at $70,36, taking his receipt therefor, the same " to be accounted for at the above prices, when sold," (the prices of each kind being named in the receipt,) or returned when called for.

The plaintiffs proved by said Gerrish, that when said property was left with him, the boots were in a case, and at the time of the attachment had not been taken out, although the cover had been removed and the boots exposed for sale, and two pairs sold ; the brogans and shoes had been taken out and placed in a drawer and on a shelf with other shoes belonging to said Gerrish. It appeared that the plaintiffs also had another box of boots at said store, which were not taken, because said Gerrish told the officer and the attorney of the attaching creditors that they belonged to the plaintiffs, and they took no property which said Gerrish pointed out as not his, and said Gerrish said that at that time he had the impression he owned those which were taken by virtue of his receipt given to the plaintiffs, when he took them, and did not think or state to the contrary at that time, and he knew of no way the officer could distinguish these goods from the rest of his stock of goods, except what information he derived, or could have derived from him, the witness. Gerrish further testified, that after said goods were carried away, he notified the plaintiffs, and one of them came down and called on him to get said boots and shoes and other property ; that he then settled with plaintiffs for what he had sold, and they agreed to look to the officer for the remainder, being those which are described in the plaintiffs' writ.

George W. Wilcox was also called by plaintiffs and testified that he was the attorney of the attaching creditors, — that he was with the officer at the time the attachment was made, and directed him to attach all the goods in the store belonging to said Gerrish ; that said goods were removed to the store of one Clary, about a mile and a half from Gerrish's store ; they were attached on the 27th day of March, 1847, and shortly after this one of the plaintiffs called upon him, the said Wilcox, and claimed said goods as his ; that said Wilcox said he did not feel authorized to give them up, but would write to his clients and see what they would do about it. Plaintiffs then exhibited to him the receipt given by said Gerrish for the goods on the 10th of March preceding ; and he would take the

goods where they then were, if the creditors would give them up, as he did not wish any law about it, and said, if they would give them up he would send one Rollins to get them; that said Wilcox promised to, write to his clients and see what they would do about it; that he wrote to their attorneys in Bangor, who wrote back that he might give up the said property. The said Wilcox further testified, that he did not give any notice of this answer to the plaintiffs or to said Rollins and that he expected Rollins would call on him for the goods.

It appeared that said Gerrish had settled with the attaching creditors about the first of May, and they took all the other goods attached, except the goods sued for in this writ, and they were not to have them.

Whereupon the Court directed a nonsuit. To which the plaintiffs by their counsel excepted.

*May*, for the plaintiffs, said that the reasons for ordering the nonsuit did not appear, but it seemed to be admitted, that it was founded upon a supposed intermingling of the goods with those of Gerrish, the debtor, that they could not be distinguished. But here was no confusion of goods, and there was no difficulty in ascertaining, by proper inquiry, what belonged to the debtor, and what to the plaintiffs. The only reason why the deputy did not know the facts, was because he received erroneous information. The same would have happened, had the articles of the plaintiffs, taken by the deputy, been of an entirely different description of goods. The officer must ascertain at his own risk, whether the property belongs to the debtor, and may require an indemnity, if there be doubt. If he take one man's property on a writ against another, the owner may maintain an action against such officer without making any demand. *Lothrop* v. *Arnold*, 25 Maine R. 136; *Stickney* v. *Davis*, 16 Pick. 19; *Hobart* v. *Hagget*, 3 Fairf. 67; *Galvin* v. *Bacon*, 2 Fairf. 28; *Woodbury* v. *Long*, 8 Pick. 543. From these cases it is clear, that the intent of the officer is of no consequence in determining whether the taking was tortious or not. And it is equally clear, that if the property taken be-

longs to any other person than the debtor, the precept gives no authority whatever for the taking.

The plaintiffs have done nothing to forfeit their rights to their property. They did not intermingle it with that of the debtor. And besides, the doctrine of confusion of goods is not applicable to such property as this was. 2 Kent, 364 ;. 2 Campb. 575; 1 Verm. R. 286 ; 7 Mass. R. 123.

But if any doubt remained originally, the officer made himself liable as a trespasser *ab initio* by his subsequent acts, showing an abuse of his authority. 3 Cowen, 506 ; 4 Pick. 249 ; 14 Maine R. 44.

The demand made on the attorney of the attaching creditor under the circumstances, was the same as if made upon the officer.

*J. Baker,* for the defendant, said that the plaintiffs made Gerrish their agent, and they were bound by his acts. He pointed out to the officer, all the property which he said belonged to the plaintiffs, and gave up the rest. The officer did not interfere with the property claimed as the plaintiffs' by their agent.

Here the goods of the plaintiffs were so intermingled by their agent, for whose acts they are responsible, with the goods of the debtor that they could not be distinguished. In such case no action can be maintained against the officer ; certainly not without first making a demand. 7 Mass. R. 123 ; 8 Pick. 443 ; 5 N. H. Rep. 364 ; 6 Pick. 478.

There was no after misconduct of the officer in relation to the goods. After the action was settled, an agent of the plaintiffs was to go for the goods, but before he called, the suit was brought.

The opinion of the Court, WELLS J. dissenting, was drawn up by

TENNEY J. — The jury would have been authorized by the evidence introduced in the case, to have found the goods in question to be the property of the plaintiffs, at the time they were taken by the defendant's deputy ; they had been pre--

viously left with Gerrish to be sold, the avails to be accounted for, or the goods returned on demand. The boots were in a case by themselves, two pair having been sold, and the cover of the case removed. The brogans belonging to the plaintiff were the only ones in the store, and they together with some shoes of the plaintiffs were in drawers and on shelves with shoes belonging to Gerrish. The officer who made the attachment, and the creditors' attorney, who directed it, had no means of distinguishing the goods of the plaintiffs from those of Gerrish at the time of the taking, excepting from information derived from Gerrish, the plaintiffs not being present. No goods, which Gerrish pointed out as not belonging to him were taken; and he testified, that at the time, he had the impression that he owned those belonging to the plaintiffs, by virtue of the receipt which he gave to the plaintiffs, when he received them, and that he did not think or state to the contrary, when they were taken. The officer acted under an honest but mistaken belief, that he took nothing which did not belong to Gerrish. There is no evidence tending to show, that both parties, and all those concerned in the property previous to and at the time of the taking, did not conduct in good faith touching the goods.

An officer is not protected in taking property belonging to one against whom he has no precept, unless the owner has so conducted, in reference to it, that he has forfeited his legal rights. An action may be maintained against the officer by the owner without any previous demand or notice. It is no defence that he acted under a mistake. He, as a public officer, can avail himself of his own mistake, no more, than could a private individual. *Hobart* v. *Haggett,* 3 Fairf. 67 ; *Lothrop* v. *Arnold,* 25 Maine R. 136. But a previous demand upon the officer may be necessary for the maintenance of an action, when the plaintiffs' goods are so intermingled with those of the debtor, as not to be distinguishable. *Bond* v. *Ward,* 7 Mass. R. 123. It is only under such a condition of the property that the officer may be regarded by the law, as without fault, though guilty of no moral wrong. If the confusion be by

consent of, or without the fault of either party, the proprietors would have an interest in common, in proportion to their respective shares.   But if the mixture were caused by one party without the consent of the other, knowingly and wrongfully, and it were impossible to distinguish what had belonged to one, and what the other, the one who had caused the confusion would under the common law forfeit the portion, which was previously his.   *Shumway & al.* v. *Rutter*, 8 Pick. 443; 2 Blacks. Com. 405; 2 Kent's Com. 364 (2d Ed.); *Lupton* v. *White*, 15 Vesey, 442; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 108.   "But," Chancellor Kent remarks, "this rule is carried no farther than necessity requires; and if the goods can be easily distinguished, and separated, as articles of furniture for instance, then no change of property takes place."   In *Shumway & al.* v. *Rutter*, the Court say, "if the owner of a part can distinguish and point out to the officer what belongs to him, the officer would be a trespasser if he should take it."

It is not necessary, that the property should be so distinctly marked, that an officer, by his own minute observation, would be able to perceive that it did not belong to the same individual, in order to make him liable; if such were the law, he would be excused for taking cattle belonging to a stranger, when found in the same herd with those, against whom he had a precept, but it must be such a confusion, and the character of the articles must be such, that they are not distinguishable by those, who from their interest or situation, have full opportunity of making and pointing out the distinction, if one exists.

In the case at bar, the boots could not be considered as intermingled with those of Gerrish, so that they could not be distinguished as easily as any two parcels of goods, which are found in shops; the brogans were the only article of the kind in the shop; and the shoes although in the same drawers or on the same shelves with other shoes belonging to Gerrish, still it does not appear from the evidence, that they were not distinguishable therefrom.   The case presents nothing, which discloses, that the plaintiffs, or Gerrish, or others, might not have made and pointed out a clear distinction at the time.   After the

plaintiffs were informed of the taking, they satisfied those interested in the attachment, that the goods were theirs, so far, that they did not insist upon retaining them as legally holden.   The mistake of the officer did not arise, from a confusion of the goods, as the term is understood in law, but it arose from the omission of Gerrish to inform him what goods belonged to the plaintiffs, on account of an erroneous impression in reference to the plaintiffs' legal rights, he supposing, that the goods in question were his, under the receipt which he had given therefor, when they were not.

It is insisted, that the plaintiffs had waived the right to commence and maintain the action by his agent, Gerrish, who did not point out these goods as not belonging to him, when they were taken by the defendant.   Gerrish was the agent of the plaintiffs to sell the goods for them, and the evidence exhibits no other agency.   He could not by virtue of that authority have surrendered these goods to the officer, to be attached as his, and consequently the simple omission to assert the plaintiffs' ownership could have no greater effect to the prejudice of the owner.   Neither is it certain that the plaintiffs themselves waived their rights, by what is shown to have taken place, when they called upon the creditors' attorney, as it is contended that they did.   They called upon the attorney, exhibited their receipt from Gerrish, and claimed the goods, then in the custody of the officer, at considerable distance from the place, where he had left them ; and offered to take them where they then were, if they should be given up ; and would send their messenger for them.   The attorney declined to give them up, for want of power from the creditors ; but said he would write to his clients for instructions.   This he did, and received authority to give up the goods, but no communication of this was proved to have come to the plaintiffs' knowledge, and it does not appear that the attorney wrote by his request ; and it is difficult to perceive how, by these facts, he relinquished any rights before existing. His offer to take the goods could have no effect, so long as he was not permitted to take them.

The facts relied upon by the plaintiffs, we think, should have

Tufts v. McClintock.

been submitted to the jury, as there was evidence, from which the jury might have found the trespass to have been committed ; and there was nothing in the proof adduced by them, which conclusively showed, that they had waived their right to maintain the action. *Exceptions sustained, and*

*nonsuit taken off.*

Dissenting opinion by

WELLS J. — Not being able to agree with the other members of the Court, in the conclusion, to which they have arrived, upon this case, I deem it proper to state the grounds of my dissent. This action is trespass for boots and shoes, which the plaintiffs had left with one Gerrish for sale. The boots were in a case, and at the time of the attachment, the cover of the case had been removed, and two pairs of them had been sold. The shoes had been taken out and placed in a drawer, and on the shelf, with other shoes belonging to Gerrish. The plaintiffs had another box of boots, in the store of Gerrish, but they were not taken, because he informed the officer, that they belonged to the plaintiffs. Gerrish states, that he had the impression, that those, which were taken by the officer belonged to him, and that the officer did not take any property, which was pointed out, as not belonging to him. He also testifies, that the officer could not distinguish the goods attached, from the rest of his stock, except from information derived from him.

The question arises in this case, whether an officer is liable to an action until a demand has been made upon him, for attaching the goods of a stranger, when intermingled, by his consent, with like goods of the debtor in possession of the latter, and the officer has no notice, that they belong to the stranger, or they cannot be distinguished upon due inquiry, from those of the debtor.

In the case of *Bond* v. *Ward*, 7 Mass. R. 123, Parsons C. J. says, " Goulding's (the debtor's) furniture was in his actual possession, in his dwellinghouse ; he, (the officer) ought therefore to have attached that furniture ; and if he attached some furniture of other persons, which was in Goulding's house and

mixed with his, when the right owner claimed his part, the deputy sheriff might have restored it, without subjecting himself to an action by the plaintiff. And if the goods of a stranger are in the possession of a debtor, and so mixed with the debtor's goods, that the officer, on due inquiry cannot distinguish them, the owner can maintain no action against the officer, until notice and a demand of his goods, and a refusal or delay of the officer to redeliver them."

Ordinarily, where one interferes with the property of another, without his consent, he is liable to an action of trespass. But there are exceptions to this rule. In cases of an ownership of chattels, by tenants in common, the officer, having a precept against one tenant, may seize the whole chattel, and is not a trespasser, but he can only sell on execution the interest of the one against whom he has the precept. When the corn of the debtor is mingled with the corn of a stranger, and cannot be distinguished, an officer for attaching the mass, as the property of the debtor, is not liable to an action. And the same result must follow in all cases of confusion of property. *Lewis* v. *Whittemore*, 5 N. H. Rep. 364. The law does not require of officers what is impossible or unreasonable.

There is not the same difficulty of distinguishing furniture, or boots or shoes, belonging to one person, from the same kind of property of another, as exists in the case of corn ; but still the difficulty is intrinsically great. In one case, the officer is not considered in fault, because it is impossible to separate the property of the different owners. In the other, if he finds the property in the possession of the debtor, and has no knowledge of the intermixture, or cannot make the separation, by due inquiry, he would also appear to be without fault. It is unreasonable to consider him a trespasser in either case. The same principle, although in different degrees, applies to both; it is, that he conducts without fault. The law requires him to take the debtor's property, and in doing so, he unavoidably takes that of a stranger with it.

Where the owner of property consents to have it placed with that of another, and his own conduct has induced the

belief, that it belongs to the possessor, he ought to be required to make a demand for it, before commencing an action against an officer, who attaches it as the property of the possessor. In those communities where attachments are frequent, the owner must know, that his property is liable to be taken with that of the possessor, and it is no great inconvenience to subject him to the trouble of demanding it. When whole stocks of goods are attached, usually some portions of them belong to persons, other than the debtor, and cannot be distinguished by due inquiry ; or the officer may have no reason to suppose they are not the debtor's, and he ought not to be held a trespasser, while acting with fidelity, in the discharge of his official duty.

In *Shumway et al.* v. *Rutter*, 8 Pick. 443, reference is made to the case of *Bond* v. *Ward*, without any disapprobation. And it is said, by Parker C. J., that the principle of that case, applies to the taking, but if the officer sells, knowing the property to be the plaintiff's, the sale is a conversion.

In *Sawyer* v. *Merrill*, 6 Pick. 478, it was decided, that if an officer, having attached goods of a debtor, suffers them to remain intermingled with other goods of the debtor, and makes claim to the whole, so that another officer having a writ against the same debtor, cannot distinguish which have been attached, the latter officer will be justified in attaching the whole. The property was household furniture. The officer making the first attachment had a right to hold what he had taken, if the officer making the second one could have distinguished between what furniture had been and what had not been attached. It is said by the Court, that the same principle applies, as in the case of a stranger's goods, intermixed with those of the debtor. And such is the ground of the decision. The officer, making the second attachment, not being able to distinguish what had been previously attached, was justified in taking the whole. He was in no fault, and was not a wrongdoer. The case of *Bond* v. *Ward*, is supported by the doctrine, promulgated in the two cases last cited.

And in my judgment, as it appears that the plaintiffs con-

sented to the mingling of their goods, with similar ones of the debtor, in his possession, and the deputy of the defendant had no notice, that any portion of them which he took was the property of the plaintiffs, or upon due inquiry, he could not distinguish them, that this action for the taking cannot be maintained.

MEM. — This and the next case, *Eaton* v. *Elliot*, were Cumberland cases, and were accidentally placed with those in Kennebec. The error was not discovered until after the Cumberland cases were printed.